Testing, one, two, three, testing. Good morning everyone. The panel has before it a total of five cases. One of them is being submitted today on the briefs without oral argument, namely, Appeal 2008-5049, Mazon v. United States. On our argument list, we'll hear argument first in Lexion Medical v. Northgate, Appeal 2007-1420. Ms. Addy, good morning, welcome to the court. I'm told that you're reserving three minutes for rebuttal, is that right? That's correct, Your Honor. Please proceed. Thank you, Your Honor. Good morning, Your Honor. This case harkens back to a time when the jury wrestled with claim meeting without the aid of the court's interpretation. Here, two disputed claim terms were not construed for the jury, a predetermined temperature and as it exits the chamber. Either requires reversal. In addition, Lexion told the PTO one thing and it tells the court another about the disclaimers in the means for heating and the means for humidifying, which also require reversal. Is it your argument that the mere failure of the trial judge to construe the phrase temperature is per se reversible error? Yes, Your Honor. Under this court's precedent in Sulzer and more recently in O2 micro, the court is under a duty to construe disputed claim terms and this term was disputed at Markman, at summary judgment. It was disputed by both experts who testified based on their own party's claim construction, leaving the jury to struggle with dual interpretations. Well, if the jury had picked what, let's say we all agree, was the correct construction, then wouldn't we have to say that any error by the trial judge in failing to constructions was a harmless error? Your Honor, we either don't know what construction the jury picked or we know for sure that the jury did not pick the correct instruction because we know from Lexion's expert's test that under the correct construction, Northgate does not infringe. And those tests, Your Honor, are summarized for you at the blue brief at page 19. And this has to do with whether the temperature drop upon entry to the patient is more than 2 degrees? That's correct, Your Honor. And the argument the other side makes is that, well, some of the time it is within the 2 degree requirement, even though it's not always. What's your response to that? Well, Your Honor, that argument was not presented at trial and there's no expert testimony based on that. I believe that's an instantaneous infringement argument or they're talking about sometime based on startup and changing of the flow conditions. And this is a device that talks about constant temperature. And the purpose of this device is to maintain the temperature at a constant body temperature within a very minimal range. And so those instances, which are arguments that were created for this appeal and not based on the evidence, are simply incorrect. Well, to the extent that the chart of temperature readings from the experiments by one of the experts that you referred to earlier shows some compliance with the 2 degree requirement, the record evidence is there, so why shouldn't we look at that? Because the chart shows that the record evidence there is improper and there are tests that fall outside the record evidence. I believe the case they rely on is Bell. And Bell talks about sometimes infringement, but this isn't a case like Bell where sometimes is okay. And this is a case more like Ferguson where it can't infringe sometimes because it has to be maintained at a constant temperature. 100% of the time? What if it's only 98% of the time? I think that's not the case here, Your Honor. I think the case is that during the procedure, it has to be maintained at a constant temperature. And, in addition, this is an argument that was created on appeal and there's not expert testimony about these temperature ranges. Is it your argument, Ms. Addy, that a district judge must construe every term in a claim? No, Your Honor, that is not our argument. Just the claim terms that are disputed by the parties and that the parties raise for the judge to construe. What if the judge feels that the terms have a clear ordinary meaning that is easily discerned by the jury? That's okay, Your Honor, as well. And the judge can say that to the jury and the judge can provide that meaning to the jury. But the judge has to give some guidance to the jury when there is a term that is in dispute. Does it matter whether the term is likely dispositive? I'm trying to understand your question, Your Honor. Let me give you an example. Suppose Judge Rader and I are on opposite sides litigating a case and you're the judge and we disagree on 40 terms. Does that mean that you as the judge are required to construe all 40 of those terms because he and I propose alternative constructions for each of the 40 without making any particular showing that it would matter as to the infringement outcome, which of the two competing constructions for any one of those 40 would be taken? No, Your Honor. I understand what you're asking, and certainly the district court is under its discretion to manage the case that it sees fit, and many district courts have limited the number of disputed terms. But whereas here, there were a limited number of disputed terms being offered and the defendants repeatedly asked for this claim term to be construed and the district judge said, I believe he said that he understood what this term was and he found that the parties had tinkered with the construction, and I believe that's at A12732 of the record. This is in the context of definiteness where the parties are saying during the jury charge that they had squabbled over, this is defendants saying, we had squabbled over what the predetermined temperature is and the ambiguity that the parties are battling is a direct result of the fact that the claim is not properly defined. And the judge says that he is fine with the claim term and he holds that it's definite. So he knew that we were battling this definition, but he didn't give the jury any guidance. What about the argument of the other side that by only contesting that the claim was invalid is indefinite, as of the charge conference, your side should be deemed to have waived other concerns dealing with that particular claim term? Well, Your Honor, under both this court's precedent, which is O2 micro, and also under the Seventh Circuit precedent if this were perceived to be a procedural issue, and I believe that's cardiac pacemakers, it's not deemed to be waived because under Seventh Circuit it would have been futile as we had raised it at Markman, at summary judgment, and again at trial. And under this court's precedent, it does not need to be raised again under O2 micro. We had preserved that issue. The fact that we brought it up again in the context of indefiniteness at the jury charge conference just adds even more to the record on this issue. If there are no more questions, I'll turn to sensing the temperature. The court failed to construe the last part of this limitation as it exits the chamber, and for the same reasons, that's reversible error, and that infects the court's construction and the jury's determination on the entire limitation. If you look at the blue brief at 13, there's a picture of the 474 patent figure 2, and that patent, you can see that the temperature sensing device is close to the end of the chamber. In the specification, it supports the limitation. It says that after the gas has been humidified, any change in the temperature of the gas as it is humidified is to be corrected at that point in the apparatus, and that's vital, and that's at column 8 of the spec, and the temperature sensor is located just prior to or immediately after operational gas permeable membrane to sense the temperature of the gas as it exits the enclosure, and that's at column 8 as well. For an infringement, if you look at our device, which is at the blue brief at page 57, our temperature sensors, which are in yellow, are located closer to the inlet of the device than the outlet of the device, and they are enclosed in the heating element. In fact, Lexion's expert admitted that there is no temperature sensor located near the exit of the chamber. Yeah, but didn't he testify that because of what he described as a thermal well effect that the cool gas in the post-humidification part of the chamber would cool the metal, aluminum, I guess, the heating element so as to trigger recognition of the temperature reduction at the front end of the heater with the result that the heater would run more frequently in order to overcome the temperature loss, and that therefore the gas was being measured at its temperature near the exit, even though the sensor itself was not near the exit, but the conductivity of the metal was so great as to transfer the temperature-sensing impact as if the sensors had been at the outlet end. But, Your Honor, his testimony about the thermal well is a big distraction. First of all, a thermal well is something that provides isolation between a temperature sensor and the environment that the sensor measures. There is no evidence in the patent specification or anywhere intrinsically that these sensors, I'm sorry, there's no evidence in any of Northgate's documents that its sensors that are located inside the heater core can possibly measure the gas that's flowing outside the heater core. So they cannot be a thermal well. They measure the heater core. Well, I understand that to be saying that if the jury believed that, they were fooled. But whether that's true or not, we may be stuck with the jury's choices as long as there was adequate evidentiary support to meet the substantial evidence requirement. And why wouldn't his testimony, even if maybe it's pure baloney, meet that substantial evidence minimum? Well, we were not under a doctrine of equivalence analysis here, and this sounds like doctrine of equivalence, because direct infringement requires the sensors sense the temperature of the gas, and the sensors did not measure the gas at all. The sensors are measuring the heater core. Well, but his testimony is that indirectly they measured the temperature of the gas as it exits because of the way that the heater element operated. As I say, maybe that isn't good physics. I don't know. But why wouldn't the jury be entitled to rely on that if they chose to believe it? And I see I'm out of time. May I answer your question? That's the key, Your Honor. That's the key. It's indirectly, and indirectly is a doctrine of equivalence analysis. But the claim just says you have to sense the temperature. It doesn't tell you how you have to do it. So if they do it indirectly, directly, as long as they've sensed the temperature, they have satisfied the claim. Is that correct? I disagree with that. The claim says you have to sense the temperature of the gas, and the sensing is going on in the heater core, not the gas. Okay. All right. Why don't you reserve the rest of your time, and we'll hear now from Mr. Whitting. Thank you, Your Honor. Mr. Willie, good morning to you. Good morning, Your Honor. May it please the Court, I would like to briefly address a couple of the points from the yellow brief on obviousness, and then turn to the ---- Well, you've got a bigger problem on the claim construction, don't you? Which limitation, Your Honor? Well, the ---- The two that were discussed. Exactly. But let's deal with the biggest one, because the jury has to have found that a predetermined temperature means a range, or they wouldn't have found infringement. And how do you justify that in light of the numerous instances in the specification that make it very clear we're talking about a specific temperature, the body temperature of the patient? Well, Your Honor, I think we're not talking about a specific temperature. And when we start with construing that limitation, we start with the context of the claim. And there's three things to observe about the context of the claim, and that's where Phillips says we start when interpreting a claim. Thanks. Go ahead. Give me what you've got. Number one is that the word predetermined in element 11E, the only time that word appears in the claim before that is referring to a predetermined range of temperature. So what? I don't understand what you draw from that. That is referring back to that limitation in 11A, a temperature within a predetermined range. Yeah, but a temperature is part of the phrase. Well, it's just a temperature within a range, any temperature within a range. A means one or more. Yeah. This Court's case law says that, and the patent explicitly says that. Don't walk away from the point. Okay, it can be any temperature within the range of, let's say it's five degrees, but it still has to be a particular temperature. No, but the patent sets the range as two degrees, within two degrees of the predetermined temperature. That's the range. Well, the temperature determines. And it says that in the table here, too. Look at the fourth note of Table 1. The list of temperatures indicate the range of temperatures from which the predetermined temperature was selected. Right. But there's a predetermined temperature. Predetermined temperature is used. Now we're turning to the specification. We sure are. Predetermined temperature is used in the specification. For example, it talks about this desirable range, 36 to 38 degrees. That term is used at Column 5, Lines 23 to 25, to talk about a desirable predetermined temperature. So the word desirable predetermined temperature is used to talk about a range, 36 to 38. But aren't they referring there to the normal range of human body temperature, the thought being that the selected temperature will be one of a temperature in that range, one of those temperatures? No, Your Honor. That is the defendant's spin on the specification. But, in fact, in Column 6. Look at the rest of Column 5. It defines it. A predetermined temperature is one that has been preset and is not altered. It's one temperature. That definition, Your Honor. And the desirable predetermined temperature is the body temperature, 36 to 38. Right. It describes the desirable predetermined temperature as a range, 36 to 38. That definition is defining the fact that the surgeon does not get to alter the temperature. That is the focus of that definition. Not whether it's one temperature or multiple temperatures. And then when we get to Column 6. In Column 6, again, this is used interchangeably. Predetermined temperature, predetermined range. In Column 6, Line 42, it talks about that the temperature exiting the chamber is within a preselected physiological temperature range. Preferably 36 to 38 degrees. Though any desired temperature range can be preselected. So the term predetermined range and predetermined temperature is used alternatively in the specification to refer to this 36 to 38 degree range. Now, Your Honor asked about the table at the end of the patent. The table at the end of the patent supports our construction, not the defendant's construction. If you look in the table at what the ranges are in this table, these ranges range 10 degrees. One goes as high as 24 degrees. None of the temperatures are within a four degree range at the output of the chamber. So all of the embodiments here would not be within the scope of the claim if the defendant's construction were right. And even if the defendant's construction were right, there is substantial evidence in the record from which the jury could have concluded. Are you telling me that this invention works properly if you are feeding gas into my body cavity at 10 degrees Celsius lower than 36, at 26 degrees Celsius? At 10 degrees lower? Yes. At the range, at 10 degrees lower, it can work? If it was properly... That's a lot, by the way. I don't know. I don't think there's any evidence in the record. That's the whole thing the specification says you're trying to do away with, is that kind of temperature fluctuation and the pain and slow recovery that it engenders. What the specification teaches with respect to range is that... Is you keep it very close to the body temperature of the patient. That's why you move the whole heating device up close to the patient, right? That's right. And the substantial evidence here is that even under the defendant's construction, that is done in the defendant's device. Occasionally, but not very often. Rather rarely, though, doesn't it, because they vary so much. Actually, Your Honor, it's not occasionally. I want to make something clear here. There are three things very misleading about what the defendants, how the defendants are construed. I'm just talking about the chart. I don't care what the other side argues. When you look at the chart, the vast majority of the readings, about 90%, are outside of 2 degrees variance, and only about 10% are inside 2 degrees variance. Okay. Now, this is what I mean by the defendants are looking at the evidence in a misleading way. Claim 11E is talking about the temperature of the gas as it enters the patient. What they are talking about in their brief is the temperature of the gas in the chamber. The range is narrower at the patient. If the court will look at pages A7508 to 18 of the record, that is Dr. Bourbon's experiments on the patient, on the simulated patient. And I want to come back to the issue of simulated patient. In that, in those experiments with a simulated patient, with a trocar stuck at something that's about 98.6 degrees, the temperature entering the patient, which is what 11E is talking about, was between 34.43 degrees and 38.43 degrees for all but about 2 minutes of an hour. And when was it not within this temperature range? When did it deviate a small amount? Three times when the gas changed from a flow of 1 liter per minute to 20 liter per minute. When the gas changed from 5 liters per minute to 20 liters per minute. Exactly what the table that Judge Rader just referred to teaches will occur because when you change the gas flow significantly, it puts a new strain on the heater or relaxes the strain on the heater and the temperature is going to deviate some. So it is actually quite consistent with the specification when you look at the data on the simulated patient. Now there were two trials that the expert did. One of them where he did not use a simulated patient. But the one where he did use a simulated patient, it's within the 4 degree temperature range. Now the defendants say, oh well the temperature can't, it can't be any narrower at the patient than it is at the humidifier. But that's wrong. Now in that footnote 4 of table 1, we're talking about a selected temperature. If we're talking about selecting a temperature, what does it mean that that is a range? Well the term temperature is sometimes used to refer to a range of temperatures and it's referred to in here. But we're talking about a selected temperature. Well it says that it's, excuse me your honor, a selected temperature. Each selected temperature was maintained within 2 degrees of that point that you selected. Right, each selected temperature was maintained within plus or minus 2 degrees of that range. Of the one you selected. Well the evidence here. You're saying I could select a range from 26 to 46 and then vary it down to 24 to 48, is that what you're saying? I'm sorry, say that again. Well I'm saying I can select a wide range from 26 to 46, right, Celsius. Now of course right in the middle is body temperature. And then you're saying the claim means well and then 2 degrees of that range, I could go to 48 or down to 24. That's right, now that's not a realistic example. If you were going to build this invention, you're going to be in a narrow range, but the claim doesn't require that. The specification teaches it can be any range and the specification doesn't specify it. It says it's a pre-selected temperature though. And that seems to be, if you read the specification, the temperature of the patient, 36 to 38 degrees. And then you're only going 2 degrees up or down from the single temperature you selected, right? Pre-selected temperature is used interchangeably within the specification to refer to a range of temperature. And to refer to this singular use of pre-determined temperature is used interchangeably with the term range. Going back to the context... You have a problem here. It just looks like you're conveniently altering the meaning of the claim to make sure you get infringement. We're not altering the meaning of the claim, Your Honor. If it's that difficult to determine its meaning, do we have a definite in this problem? There is no definite in this challenge on appeal, and it's not that difficult to determine its meaning. In the context of the claim, the context of the claim is control within a range. It would not make sense, and their expert agrees. First of all, their expert agrees you cannot... But the range is just 2 degrees up or down from the selected temperature, right? It does not say that in the claim. It says you control to within a pre-determined range within the claim, and you determine whether or not the temperature... No, it says within 2 degrees centigrade of the pre-determined temperature. I must say I agree with Judge Rader, this footnote 4 to this table. I just don't see how anyone can look at that and bring the normal logic and reason and common sense to it to say anything, but that that means that in that footnote 4, you select one temperature from those ranges. Two things in Your Honor's question. The first is that in the claim, the 11E, which is saying within 2 degrees, that's talking about what's happening as the gas enters the patient. The control within the chamber within a range, and it says 3 times you're controlling it to within a range, that's what's occurring within the chamber of the heater-humidifier. Right, I understand, but it says a pre-determined temperature, and then in 11A, you have the gas to a temperature within a pre-determined range, which is kind of consistent, perhaps, with this Table 1 at Column 11. I mean, it just seems... You know, I looked at this thing. I said, oh, of course they're talking about temperature. It wouldn't make any sense to have range. It would make sense to have a range because... Oh, you need a range from which to select a temperature. I mean, that's what that footnote says. At Column, in that table, it says you select a temperature, meaning one temperature, x degrees, from this range. Given the temperature, pre-determined temperature is used to refer to ranges of temperatures within the specification. Oh, there are references to ranges in the specification, no question about it, but I think when you look at the whole thing, the overall... I mean, we have to come to a conclusion, and I just think it does seem the better conclusion is that temperature is a temperature, not a range. But that would exclude all of the embodiments in Table 1, then, because all of these embodiments in Table 1 have more than a four-degree temperature range. No, it's saying you select a temperature from the range, from those ranges. But it also says that each selected temperature was maintained within plus or minus two degrees of that range. If you're right, if these are embodiments, how would these embodiments enable the invention? Meaning, if I actually pumped gas into my shoulder when I have my surgery, and it's 24 degrees Celsius, how is it going to be at my body temperature and keep me from suffering the side effects of cold gas in my body? The whole point of your invention. 24, 24, 22, 20, 20, 30, 24. If I'm at the bottom range of all of those, if that's what you think it can do, how do you enable your invention? Because, as you can see, the range varies, and so it's not always... No, you're saying that I can have that whole range now. And so if, indeed, and you have to enable your invention throughout the range of what you think it's claimed, how do you enable 24 degrees, keeping my body from suffering from cold gas in it, if you're using that entire range? Because in those embodiments, it's an entire range. It's not always going to be at that one temperature. You have varying gas... No, no, once you've selected the temperature, you're going to have to stay close to it, aren't you? So, in other words, you're saying you can pump gas into my body at 20 degrees Celsius and have all the benefits of your invention. I don't know, Your Honor. I don't know. There's no evidence in the record about that. Yeah, but you've got a real medical problem there, don't you? Well, I tend to think it would not have the benefits at 20 degrees, but I don't know. And I tend to think so, too. And so if you actually mean that it can be practiced at those temperatures, you've got a big problem. Well, there's no enablement argument that's been raised by the defendants. Well, there may be when we send it back. The temperature range that is given in here is... The inventors did the experiments with this. They did experiments with their commercial embodiment, and they got the benefits that are described in the papers that are in the peer-reviewed journals. Now, even if the court believes that their construction is right, there is still substantial evidence to affirm the verdict under Dr. Bourbon's analysis that I just referred to. And Bell Communications Research says that a method claim doesn't have to be infringed all the time. The case that they rely upon is a case where there was a word in the claim that meant it had to be infringed all the time. That is not the case here. And, in fact, the specification, Table 1 in particular, the same footnote that the court referred to, talks about there being transient time periods at startup and when you have a change in gas flow, where you're not going to be within that temperature range. So the specification explicitly teaches you won't always be within the range. All right, we've given you some extra time, so we'll hear rebuttal now from Ms. Addy. Ms. Addy, you had three minutes reserved, and if you need five, you can have it since we gave Mr. Willey two minutes extra. Thank you, Your Honor. A couple of points. First, in order to achieve the claim construction that they would like to ensnare infringement, they have to read out the predetermined part and they have to read in a range into the term predetermined temperature. And a predetermined temperature, as Judge Rader pointed out, is defined in the specification. In addition, the test data that they refer to at 7508, their analysis of it is new and there's no expert testimony about how to apply it. And there's no predetermined temperature with which to analyze it. It's just empirical test data. What about the ranges that they do list here in Table 1? The ranges have a predetermined temperature and I can't make heads or tails of it because there's no expert testimony on it. In addition, their expert, Bourbon, testified to the contrary, and he said at the record at 12365, the range at the outlet was broader than it was 13 to 15 degrees. It was not 2 degrees. The data says that. So his testimony on the data says that it's not within that 2-degree range. Sandy, let me ask you. Assume for the moment the court were to agree with your construction of this limitation. Just saying this is the only limitation in the case. Is the proper result here to send it back or can we rule in your favor? You have a situation where it appears that they litigated the case below under their construction of the limitation. If we conclude, and there was no construction by the judge given, if we conclude that that limitation was improperly construed, wouldn't we have to send it back for proceedings under what we said was the correct construction? It seems difficult for us to... I'm just thinking off the top of my head a little bit. I apologize. But it seems difficult to say that you would be entitled to a judgment of non-infringement with respect to that limitation on the record for us. In this case, Your Honor, I believe you can say that we're entitled to a judgment of non-infringement because we have the testimony of Bourbon saying that under our claim construction there is no infringement. And if I may read the entire testimony, which isn't very long, I believe it says, it talks about the claim construction, and it talks about how he says under our claim construction, or Mr. Delaney arguing for Northgate says, you're not interpreting this under Northgate's claim construction, and I don't have it right in front of me. And he says, no, but he says, what if you're wrong, sir? And Mr. Bourbon says, if I'm wrong, the jury will decide that. And then he makes his statement that I just read about the span being 13 to 15 degrees. So there is factual evidence that it is outside the range of 4 degrees plus or minus 2 degrees. So I think you can rule on the record as it stands and not send it back. And if there are no more questions, Your Honor, thank you very much. Thank you. Both counsel will take the appeal under advisement.